# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | ) |
| | ) |
| | ) Chapter 11 |
| **SCARBOROUGH-ST. JAMES** | ) |
| **CORPORATION,** | ) Case No.: 15-10625-LSS |
| | ) |
| **Debtor.** | ) **Hearing Date: April 30, 2015 at 2:00 p.m.** |
| | ) **Objections Due: April 23, 2015 at 4:00** |

## MOTION OF 67500 SOUTH MAIN STREET, RICHMOND, LLC FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION 362(d) TO PERMIT IMMEDIATE POSSESSION OF PREMISES RELATED TO TERMINATED LEASEHOLD

67500 South Main Street, Richmond, LLC ("**Landlord**" or "**Movant**"), the owner and landlord for the Shopping Center (defined below), by and through its co-counsel, Sullivan Hazeltine Allinson LLC and Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, hereby moves this Court (the "**Motion**") for entry of an Order:

(a) pursuant to sections 362(d) and 105 of title 11 of the United States Code ("**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), granting relief from the automatic stay arising under Bankruptcy Code section 362(a), to the extent applicable, to permit the completion of an Action[1] pending in the Michigan District Court for possession of a shopping center known as the Richmond Kmart Center, located at 67300-67500 Main Street, Richmond, Michigan ("**Shopping Center**" or "**Premises**"), including (i) entry of a judgment of immediate possession of the Premises in favor of Landlord and (ii) issuance of an order immediately evicting MCANY of Richmond Fund II, L.P., the former tenant ("**MCANY**"), and Scarborough-

---

[1] *67500 South Main Street, Richmond, LLC v. MCANY of Richmond Fund II, L.P. and Scarborough-St. James Corporation*, Case No LT-140473 ("**Action**"), pending in Michigan District Court, 42nd Judicial District ("**Michigan District Court**"). A copy of the **Complaint (with Exhibits)** in the Action is attached as **Exhibit A** to this Motion.

St. James Corporation ("**Debtor**" or "**SSJC**"), MCANY'S servicing agent pursuant to a separate Servicing Agreement between MCANY and SSJC;

(b) in the alternative, determining that the Lease has terminated at the expiration of its stated term and holding that, pursuant to Bankruptcy Code sections 541(b)(2) and 362(b)(10), the Lease is not property of the estate and that the automatic stay does not apply to the Action;

(c) in the alternative, determining that the Debtor is not a party to the Lease and that the Lease is not property of the estate and holding that the automatic stay does not apply to the Action;

(d) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and

(e) granting such other relief as this Court deems just and proper.

In support of this Motion, the Landlord respectfully sets forth and represents the following:

## PRELIMINARY STATEMENT

1.     This bankruptcy case is the latest chapter in a protracted and deliberate campaign conducted by SSJC since 2008 to retain control over the Shopping Center and its revenues while refusing to pay any rent for over six years and unlawfully depriving the Landlord of its property. The campaign must end.

2.     MCANY was the tenant under a now-terminated Amended and Restated Intermediate Lease ("**Lease**") related to the Shopping Center.[2]  Pursuant to a written servicing agreement ("**Servicing Agreement**") with MCANY, SSJC collected rent from subtenants and was responsible for fulfilling all of MCANY's responsibilities and obligations under the Lease.

---

[2] A copy of the Lease is attached as **Exhibit 1** to the Complaint (**Exhibit A** to this Motion).  The Lease is governed by New York law.  Lease § 18.12.

3.    Several salient facts inform this Motion:

a.    There is no dispute that **neither SSJC nor MCANY ever paid a dime** to the Landlord under the Lease at any time since the Landlord obtained title to the Premises in October 2008 – **a period now exceeding six years**.

b.    There is no dispute that SSJC and MCANY owe the Landlord no less than $943,604.47 for unpaid rent from November 2008 through December 2013.[3]

c.    There is no dispute that the rent obligations of SSJC and MCANY were determined and confirmed after years of litigation (instigated by SSJC) by the Final Award issued by the arbitrator, the Honorable Garret E. Brown (Ret.), former Chief Judge of the U.S. District Court for the District of New Jersey,[4] and confirmed by the Decision and Order of the Supreme Court for the State of New York.[5]

d.    There is no dispute that the Landlord followed the standard procedure to enforce its rights under the Lease and in accordance with New York law[6] and terminated the Lease.  Neither SSJC nor MCANY contested the notices or sought or obtained a stay or toll of the 60-day cure period for the default in the payment of rent.

e.    Thus, the Lease was terminated as a matter of law on June 20, 2014.

4.    On March 16, 2015, facing the issuance of an order in the Action awarding the Landlord possession of the Shopping Center, SSJC and MCANY asked the Michigan District Court for time to respond.  Instead, three days later, on March 19, 2015, SSJC commenced this bankruptcy case.

---

[3] The rent amount does not include interest and other charges and expenses owed by SSJC and MCANY to the Landlord, whose rights and remedies are reserved.

[4] Final Award dated January 27, 2014 ("**Final Award**"), a copy of which is attached as **Exhibit 2** to the Complaint.

[5] Decision and Order dated August 4, 2014 ("**Decision and Order**") issued by the Supreme Court of the State of New York – New York County, Index no. 602415/2009, a copy of which is attached as **Exhibit 3** to the Complaint.

[6] The Lease is governed by and construed in accordance with New York law.  Lease § 18.12.

5.      Upon information and belief, SSJC's petition was filed solely to prevent the issuance of the order awarding possession of the Shopping Center to the Landlord.  The Debtor's minimal petition and schedules list but a dozen creditors (other than Landlord) with combined claims to non-insiders of $20,118.38.  SSJC lists the Landlord's claim as a contested judgment in the amount of $720,204.80.  Here, too, SSJC misleads the Court – the undisputed amount of rent obligations owed by SSJC is at least $943,604.47.  Further, this obligation is not a "Contested Judgment," but rather, is based on the Final Award confirmed by the Decision and Order.

6.      SSJC also misleads the Court in its portrayal of the Lease.  SSJC lists the Lease as an executory contract in its case and describes the Lease parties as SSJC and MCANY.[7]

7.      SSJC is not the tenant and is not a party to the Lease.  The parties to the now-terminated Lease were the Landlord and <u>MCANY</u>, not SSJC.

8.      SSJC is the servicing agent for the Shopping Center pursuant to a separate Servicing Agreement between SSJC and MCANY.  SSJC collects the rents from Shopping Center subtenants, and is obligated to fulfill MCANY's responsibilities and obligations under the Lease.[8]  Inexplicably, SSJC does not list the Servicing Agreement in its schedules.

### RELIEF REQUESTED

9.      For over six years, MCANY and SSJC have impermissibly appropriated rents due to the Landlord and unlawfully deprived the Landlord of its property and revenues.  SSJC is now improperly invoking the protections of bankruptcy to further frustrate the Landlord in the diligent exercise of its rights and remedies.  The Landlord is severely prejudiced by further delay.

---

[7] Schedule G -- Executory Contracts and Unexpired Leases, filed in this case on March 19, 2015 [ECF Doc 4], at p. 12. The Landlord is listed as an Other Party.

[8] *See* Decision and Order, at p. 9.

4

10.    The Court should grant relief from the automatic stay (or hold that it does not apply in this case) to permit the Landlord to complete the Action and end the abuse and stratagems employed by SSJC for over six years.

11.    In the facts and circumstances of this case, relief from the automatic stay is fully warranted.  The Landlord requests the entry of an Order substantially in the form attached as **Exhibit C** to this Motion.

## JURISDICTION

12.    The Court has jurisdiction over this Motion pursuant to sections 157 and 1334 of title 28 of the United States Code ("**Title 28**").  This matter is a core proceeding pursuant to section 157(b)(2)(A), (G) of Title 28.  The statutory predicates for the relief sought in this Motion are Bankruptcy Code sections 105, 362(d), 362(b)(10), and 541(b)(2) and Bankruptcy Rule 4001(a).

## BACKGROUND[9]

**The Lease, the Servicing Agreement, and the Landlord**

13.    MCANY was the tenant under the now-terminated Lease related to the Shopping Center.  MCANY had the right to collect rents from subtenants and the Lease required annual rent payments.

14.    Pursuant to the Servicing Agreement with MCANY, SSJC collects the rents from Shopping Center subtenants, and is obligated to fulfill MCANY's responsibilities and obligations under the Lease.

15.    In 2007, a non-party, Richmond Realty Limited Partnership ("**Richmond**") was (a) the owner of the Shopping Center and landlord under the Lease with MCANY and (b) a debtor in bankruptcy.  Madison Realty Capital, L.P. ("**Madison**") made a $3.1 million debtor-in-possession

---

[9] Additional facts and background are set forth in the Final Award and the Decision and Order, attached as **Exhibits 2 and 3**, respectively, to the Complaint.

loan ("**DIP Loan**") to Richmond, which was secured by the Shopping Center. Richmond defaulted and did not pay the DIP Loan. Madison foreclosed, was the prevailing bidder at the foreclosure sale, and assigned its rights to the Landlord, who acquired title to the Shopping Center in October 2008.

16.     Neither MCANY as the tenant under the Lease, nor SSJC as the servicing agent, has ever paid any rent to the Landlord or Madison under the Lease.

**Litigation, Arbitration, Confirmed Final Award**

17.     Years of litigation and arbitration ensued.[10]   Judge Brown (Ret.), serving as arbitrator, decided the disputed issues when he issued the Final Award dated January 27, 2014 stating that (a) the Lease was not extinguished by the Madison foreclosure; (b) MCANY and SSJC owed the Landlord annual rent under the Lease equal to the gross rents received from occupants of the Shopping Center in a calendar year (up to an annual maximum of $635,464.08) less the operating expenses of the Shopping Center; (c) the past-due rent owed for the period from November 2008 through the end of 2012 was $652,991.96; and (d) additional rent for the period after 2012 should be calculated by applying the same methodology (*i.e.,* income less expenses).[11]

18.     By its Decision and Order, the New York Supreme Court confirmed the Final Award and denied the motion of SSJC and MCANY to vacate or modify the Final Award.[12]  The Supreme Court also confirmed the arbitrator's ruling that SSJC, empowered and obligated by the Servicing Agreement to collect rents and fulfill MCANY's responsibilities under the Lease, including paying the rent to the Landlord, is obligated to pay the rent to the Landlord under the Lease.[13]

---

[10] *See generally* Decision and Order, pp. 4-7.

[11] *See* Final Award, at p. 41.

[12] *See* Decision and Order attached as Exhibit 3 to the Complaint.

[13] Decision and Order, at p. 9.

19.     Pursuant to the Final Award, SSJC and MCANY were ordered to pay the past-due rent of $652,991.96 within sixty days of the date of the Final Award.  In his Final Award, the Arbitrator set forth a detailed calculation of the past-due rent through 2012.  The Final Award also provided a formula for calculating rent that accrued after 2012.

**Default and Termination of the Lease**

20.     Despite Judge Brown's express finding in the Final Award that the tenant owes annual rent to the Landlord, SSJC and MCANY failed to make any payments to the Landlord and defaulted in their obligations under the Lease and the Final Award.  As recounted below, the Landlord exercised its rights under the Lease and followed the standard procedures under applicable law -- notifying SSJC and MCANY of the default, providing the applicable cure period and, when SSJC and MCANY failed to cure their defaults within the cure period, terminating the Lease. Neither SSJC nor MCANY contested the notices or sought or obtained a stay or toll of the cure period, as they were required to do under New York law, in order to contest the termination of the Lease.  As a result, the Lease was terminated as a matter of law on June 20, 2014.

21.     Specifically, on March 20, 2014, the Landlord sent SSJC and MCANY notice ("**Demand Letter**") pursuant to Lease Section 11.01 stating that an Event of Default had occurred because the annual rent for 2013 was not paid, and providing SSJC and MCANY with 60 days to cure their default.  Pursuant to the formula prescribed in the Final Award, the Landlord calculated that SSJC and MCANY owed $290,612.51 for 2013, based on the gross revenues generated from subtenants at the Shopping Center minus the operating expenses of the Premises (utilizing the financial disclosures supplied by SSJC itself).  The Landlord demanded payment within 60 days pursuant to Lease Sections 11.01 and 18.05.[14]

---

[14] A copy of the Landlord's March 20, 2014 Demand Letter is attached as **Exhibit 4** to the Complaint.

22.    In the Demand Letter, the Landlord also reminded SSJC and MCANY of their obligation under the Final Award to pay past due rent for the period November 2008 through December 2012 in the amount of $652,991.96; the payment was due 60 days after the date (January 27, 2014) of the Final Award.

23.    Neither SSJC nor MCANY paid the annual rent for 2013 within the sixty days of the Landlord's Demand Letter. Further, neither SSJC nor MCANY paid the past due rent owed under the Final Award within the prescribed time period.

24.    Thus, the defaults were not cured pursuant to Lease sections 11.01 and 11.02. Further, neither SSJC nor MCANY sought or obtained a toll of the 60-day cure period provided in the Lease.

25.    As a result of the defaults and payment failures described above, by letter dated May 20, 2014 ("**Lease Termination Letter**"), the Landlord provided SSJC and MCANY with written notice pursuant to Lease Section 11.02 that the Lease shall terminate and expire on June 20, 2014.[15] During the 30-day period following service of the Lease Termination Letter, neither SSJC nor MCANY sought or obtained a stay or toll of the termination of the Lease. As a result, the Lease terminated on June 20, 2014, in accordance with the Lease Termination Letter and applicable New York law.[16]

---

[15] A copy of the Lease Termination Letter is attached as **Exhibit 5** to the Complaint.

[16] *See Grand Liberte Cooperative, Inc. v. Bilhaud*, 126 Misc.2d 961, 457 N.Y.S.2d 250, 252 (App. Term 1st Dep't 1984) (holding that lease expired by its terms based on tenant's failure to pay rent and to cure its default within the applicable cure period set forth in the lease amd noting that tenant could have obtained a stay of the cure period, but chose not to do so); *Metro. 919 3rd Ave., LLC, v. P.J. Clarke's Restaurant Corp*, No. 01-309, 2001 WL 1657200, at *1 (App. Term. 1st Dep't Dec. 14, 2001) (holding that lease expired by its terms since "Tenant did not pay arrears during the cure period and remained in default when the lease was terminated after service of a notice of termination. No *Yellowstone* injunction was sought by tenant to toll the notice to cure period.").

26.     Thus, pursuant to the Lease Termination Letter and Lease Section 11.02, the Lease and the term of the Lease expired and terminated on June 20, 2014.[17]

27.     By letter dated August 20, 2014 ("**Notice**"), the Landlord provided to SSJC and MCANY written notice to quit and demanded possession of the Premises, which, among other things, (a) advised them that the tenancy under the Lease had terminated as of June 20, 2014 and (b) demanded possession of the Premises by no later than August 28, 2014.[18]

**The Michigan Action and the Bankruptcy Response**

28.     MCANY and SSJC did not surrender the Shopping Center and are holding over and exercising control over the Premises without the Landlord's permission.

29.     Consequently, the Landlord commenced the Action in Michigan District Court asserting two counts: (a) immediate possession of the Premises and eviction of MCANY and SSJC and (b) a demand for written quarterly reports and an accounting by MCANY and SSJC.

30.     Upon information and belief, on March 16, 2015, in response to the Landlord's motion for possession, MCANY and SSJC requested and were granted permission to file a response. A final hearing on the motion for possession was scheduled for April 20, 2015.

31.     On March 19, 2015, three days after obtaining time to respond in the Action, SSJC filed its bankruptcy petition in this Court.

32.     In its Petition and Schedules, SSJC listed 12 creditors (other than the Landlord) holding unsecured claims in the total amount of $67,336.67, including an unsecured priority claim of Nancy Armano, SSJC's president, in the amount of $47,218.29.

---

[17] Lease § 11.02 (Landlord "may, at its option, give written notice to Tenant stating that this Lease and the term hereby demised, shall expire and terminate on the date specified in such notice ....")

[18] A copy of the Notice is attached as **Exhibit 6** to the Complaint.

33.    SSJC listed and misrepresented the Landlord's claim as a "Contested Judgment" in the amount of $720,204.80.[19]  As SSJC knew well, the Landlord's claim for past due rent was owed pursuant to an arbitrator's Final Award that was confirmed by the New York Supreme Court; the obligation was not a "contested judgment."  The amount of the obligation for past due rent through 2013 was at least $943,604.47.[20]

34.    SSJC's Statement of Financial Affairs states that SJC had "Business Income" in 2013 of $609,445.00, in 2014 of 579,655.87, and 2015 (to date) of $122,107.28.

35.    Upon information and belief, in every year but one since 2008, the Shopping Center's generated gross revenues from subtenants have exceeded the Premises operating expenses, which amount should have been paid as rent to the Landlord.  No payments by SSJC or MCANY to the Landlord were ever made.

36.    SSJC disclosed payments to Ms. Armano of $16,531.20 (since December 2014) and $40,000 paid to SSJC's co-counsel on March 16, 2015, the date of the last conference before the Michigan District Court.  No payments to the Landlord are listed (and none were made).[21]

37.    In its Schedules, SSJC misrepresents its assets and the Lease.  In its schedule of executory contracts and unexpired leases, SSJC states the Lease is "between Debtor and MCANY" and lists the Landlord as "Other Party."  SSJC does not schedule its Servicing Agreement with MCANY.[22]

---

[19] See Petition and Schedules dated March 19, 2015 [ECF Docs 1. 4].

[20] As noted, pursuant to the Final Award, SSJC and MCANY owed the landlord past-due rent for the period November 2008 through December 2012 in the amount of $652,991.96.  Further, SSJC and MCANY owed the Landlord past-due rent in the amount of $290,612.51 for 2013.  SSJC and MCANY have also failed to pay any annual rent to the Landlord for the year 2014.  However, the Landlord is unable to calculate the precise amount of the annual rent for 2014 because SSJC and MCANY have failed to provide the necessary financial disclosures for the Landlord to calculate this amount.

[21] See Statement of Financial Affairs dated March 19, 2015 [ECF Doc 3].

[22] See Schedule G – Executory Contracts and Unexpired Leases [ECF Doc 4], at p. 12.

38.     Upon information and belief, SSJC's bankruptcy filing was an impermissible abuse of the bankruptcy process and protections intended to (a) enjoin the Action, (b) block the Michigan District Court from awarding possession of the Shopping Center to the Landlord and evicting MCANY and SSJC from the Premises, (c) preserve its unlawful control of the income from the Shopping Center, and (d) open a new front in its campaign to retain control of the Shopping Center and its revenues while frustrating the lawful and legitimate ownership rights of the Landlord.

**Relief Requested**

39.     SSJC's campaign must end. Relief from the automatic stay is warranted "for cause" to permit the completion of the pending Action and to relieve the Landlord of the continuing hardship caused by SSJC's unlawful possession of the Shopping Center and its revenues, depriving the Landlord of its rights to its property and income.[23]

40.     Further, because the Lease was terminated in June 2014, well before the bankruptcy filing, SSJC has no equity or interest in the Lease and the Lease cannot be necessary to SSJC's reorganization, regardless of whether it is an effective reorganization or in prospect. Consequently, the automatic stay should be vacated.[24]

41.     The Court may also declare that the automatic stay does not apply to the completion of the Action because the Lease was terminated and expired by its terms prior to SSJC's bankruptcy filing. Consequently, the Lease is not property of the Debtor's estate and the Landlord may continue the Action to obtain possession of the Premises.[25]

42.     Finally, SSJC was not a party to the Lease and cannot claim a leasehold or other cognizable interest in the Shopping Center. Further, on information and belief, SSJC is a servicing

---

[23] *See* Bankruptcy Code § 362(d)(1).

[24] *See* Bankruptcy Code § 362(d)(2).

[25] *See* Bankruptcy Code §§ 541(b)(2), 362(b)(10).

agent and is not in physical possession of the Premises. Consequently, the Landlord's Action to gain possession of the Shopping Center and evict MCANY, the former tenant, and SSJC does not constitute an action against the Debtor or its property that is within the scope of the automatic stay.

43.     Nonetheless, in an abundance of caution, the Landlord seeks relief from the automatic stay to complete the Action. Nonetheless, the Court may find that SSJC has no interest in the Lease or the Shopping Center and hold that the automatic stay does not apply to the Action or its completion.

## BASIS FOR RELIEF

## I.     The Automatic Stay Should be Terminated for Cause – Balancing Test

44.     Relief from the automatic stay is fully warranted in this case for cause. Bankruptcy Code section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ... for cause....

45.     The term "cause" is not defined in the Bankruptcy Code. Rather, it must be determined on a case-by-case basis. *See, e.g., Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

46.     The determination of "cause" is not subject to a rigid test. Rather, courts balance competing interests of the debtor and movant. *Tribune Media Servs., Inc. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (explaining that "[c]ause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay") (internal quotation marks and citation omitted); *see also Am. Airlines, Inc. v. Continental Airlines, Inc. (In re*

*Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993) (explaining that "[t]here is no rigid test for determining whether sufficient cause exists to modify an automatic stay").

47.    In determining "cause" in circumstances other than a bad faith filing, courts in this district generally consider the following factors in analyzing whether "cause" exists: (1) the prejudice suffered by the debtor and the debtor's estate if the stay is lifted to allow a civil lawsuit to continue; (2) the balancing of hardships between the parties; and (3) the probability of success on the merits if the stay is lifted. *See, e.g., In re Tribune Co.*, 418 B.R. at 126 (citing cases); *In re Rexene Prods. Co.*, 141 B.R. at 576.[26]

48.    Here, the facts weigh in the Landlord's favor on each of these three prongs. The Debtor will not suffer significant prejudice. The Lease is terminated and SSJC's rights to collect rents and otherwise provide services related to the Shopping Center are extinguished. Completion of the Action simply concludes a years'-long litigation process.

49.    The litigation process concerning rent obligations and amount culminated with the arbitrator's Final Award that was confirmed by the Decision and Order of the New York Supreme Court.

50.    Regarding the Lease, it was terminated on June 20, 2014 pursuant to the terms of the Lease and the standard process under applicable law. Neither SSJC nor MCANY contested the termination or sought or obtained a stay or toll of the cure period. At the end of the cure period, the Lease terminated by its terms.

---

[26] If the Court determines that SSJC's bankruptcy filing was in bad faith, initiated by the Debtor solely as a litigation strategy (which is very likely the case), "cause" is demonstrated. A debtor's lack of good faith in filing a bankruptcy petition constitutes cause to lift the automatic stay. *See, e.g., Mother African Union Methodist Church v. Conf. of AUFCMP Church (In re Conf. of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995) ("Filing bankruptcy in bad faith is 'cause' for relief under Code § 362(d)(1).") (citing cases). The Landlord believes that SSJC's bankruptcy case was filed in bad faith, as a litigation tactic by the Debtor to avoid an adverse ruling in the Action. The Landlord reserves all of its rights to seek dismissal of this bankruptcy case, and all other relief to which the Landlord may be entitled if this Court determines that SSJC, in fact, filed its bankruptcy case in bad faith.

51.    The only matter remaining is the award of possession of the Shopping Center to the Landlord and eviction of the former tenant. Resolution of any issues concerning those matters is more properly resolved by the Michigan District Court and would not cause the Debtor to suffer prejudice. *See, e.g., In re Tribune Co.*, 418 B.R. at 128 (dismissing argument that debtors would suffer prejudice if another tribunal determined contract disputes that would ultimately impact what was included as property of the estate).

52.    In contrast, the Landlord will suffer significantly greater hardships if the Action is not permitted to proceed. The Landlord has been deprived of its property and the revenues of the Shopping Center for over six years. The Action is the culmination of years of litigation and arbitration. The continued stay of the Action or restarting the litigation in a different forum would impose significant economic harm.

53.    Regarding the merits, to obtain stay relief, the Landlord need only show "a slight probability" of prevailing on the merits. *In re Continental Airlines, Inc.*, 152 B.R. at 424 ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").

54.    In this instance, the Landlord more than sustains the burden. The Landlord obtained the Final Award, establishing the obligations of MCANY and SSJC under the Lease. The Landlord obtained confirmation of the Final Award in the Award Confirmation Order and defeated SSJC's attempt to vacate or modify the Final Award. The Lease is terminated and expired as a matter of law. The Landlord fully anticipates prevailing in the Action.

55.    Evaluation of the *Tribune/Rexene* factors favors stay relief; the Motion should be granted.

14

## II.    The Automatic Stay Should be Terminated for Cause – Litigation is Advanced

56.    The Action may be very near its conclusion and, as noted above, a motion for possession is pending.  This advanced state of litigation strongly supports granting stay relief.  *See, e.g., IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 737 (7th Cir. 1991) ("[w]here the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed").[27]

57.    The legislative history of section 362 shows that a single factor, such as "a desire to permit an action to proceed ... in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case" may establish cause.  *In re Rexene Prods. Co.*, 141 B.R. at 576.  The Court in *In re SCO Group, Inc.*, 395 B.R. 852, 856-57 (Bankr. D. Del. 2007), specifically noted the following:

> [t]he legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal.  "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code & Admin. News 1978, pp. 5787, 5297. Most courts follow this logic and apply an equitable balancing test to determine if cause exists to lift the stay to allow pending litigation to proceed or continue in another forum.

58.    The Michigan District Court has been dealing with the Action since the Action was commenced in September 2014 and is fully acquainted with the parties and issues and is poised to address the relief sought therein.

---

[27] Courts have repeatedly found that "cause" exists because of how far a litigation involving the debtor has progressed.  *See, e.g., Groover v. Groover Constr., L.L.C. (In re R.I. Groover Constr., L.L.C.)*, 411 B.R. 460, 464 (Bankr. S.D.Ga. 2008) (same); *In re Carroll's Wine Co.*, 332 B.R. 874, 876 (Bankr. N.D. Iowa 2005) (automatic stay relief granted on basis that the state proceeding, which had been tried, had progressed too far to delay); *Crown Heights Jewish Comm. Council, Inc. v. Fisher (In re Fischer)*, 202 B.R. 341, 355 (E.D.N.Y.1996) (same); *Maintainco, Inc v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 131 (Bankr.D.N.J. 2003) (holding that cause existed to lift the stay given the advanced stage of the litigation); *Murray Indus., Inc. v. Aristech Chem. Corp. (In re Murray Indus., Inc.)*, 121 B.R. 635,637 (Bankr.M.D.Fla. 1990); *In re Kaufman*, 98 B.R. 214,215 (Bankr.E.D.Pa. 1989) (same).

59.    For example, the Michigan District Court issued a Modified Interim Order Awarding Injunctive Relief to Landlord dated October 20, 2014, that, among other things, constrained SSJC and MCANY regarding the use of rents collected from the Premises and certain sublease activity.[28]

60.    This Court should permit the Action to go forward and not dissipate the substantial time, effort, and resources already expended by the parties. *See, e.g., In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. at 131.

61.    The litigation among the parties has proceeded in other forums for years.    The pending Action is advanced and ready to proceed to conclusion. The Court should grant the Motion and allow the Action to proceed to completion.

## III.    The Automatic Stay should be Terminated; the Debtor has no Equity or Interest in the Terminated and Expired Lease

62.    Stay relief is warranted under Bankruptcy Code section 362(d)(2) which requires relief from the automatic stay to a party with an interest in the if property if the debtor has no equity in the property and "such property is not necessary to an effective reorganization."

63.    The Lease is terminated and expired as a matter of law.  SSJC has no equity or other interest in the Lease.  Consequently, the Lease is not available or necessary to any reorganization, whether effective or in prospect.

64.    In bankruptcy, property rights in the assets of a debtor's estate are generally determined under state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979).  Here, the Lease was terminated and expired on June 20, 2014, prior to the filing of SSJC's bankruptcy case.

65.    The Lease is governed by and construed in accordance with New York law.[29]  Under New York law, lease termination clauses are enforceable. *See, e.g., Grand Liberte Co-Op*, 126

---

[28] A copy of the Modified Interim Order is attached as **Exhibit B** to this Motion.

[29] Lease § 18.12.

Misc.2d at 963, 487 N.Y.S.2d at 251 ("Where a lease between commercial parties contains a conditional limitation for nonpayment of rent, it shall be enforced in the absence of a showing of fraud, exploitive overreaching or other unconscionable conduct on the part of the landlord."); *AWRP Properties, Inc. v. 506 Broadway, Inc.*, No. 570694/07, 22 Misc. 3d 126(A), 875 N.Y.S.2d 818, 2008 WL 5412824, at *1 (App. Term 1st Dep't Dec. 30, 22008) (holding that the "landlord was entitled to enforce the conditional limitation for nonpayment of rent contained in the governing commercial lease agreement") (citing *Grand Liberte Co-Op*).

66.    Pursuant to "standard procedure," (*Grand Liberte Co-Op*, 126 Misc.2d at 964, 487 N.Y.S.2d at 252), a landlord may terminate a commercial lease by sending the tenant in default a notice of termination of the lease, stating that the lease will be deemed terminated upon a specific date due to tenant's default.  The lease is terminated when the time expires, without any further act by the landlord. *See In re Musikahn Corp.*, 57 B.R. 938, 940 (Bankr.E.D.N.Y. 1986).[30]

67.    The Landlord here precisely followed that course.  The Lease is terminated and expired in accordance with its terms and New York law.[31]

68.    Consequently, SSJC has no equity or interest in the Lease and, *a fortiori*, the Lease cannot be necessary to an effective reorganization.  The automatic stay should be terminated to allow the completion of the Action.

**IV.    The Lease has Terminated and Expired in accordance with its Terms – The Lease is not Property of the Debtor's Estate and the Automatic Stay does not apply to the Completion of the Action**

69.    A commercial lease that has terminated prepetition "at the expiration of the stated term" of the lease is excluded from the property of the estate.  Bankruptcy Code § 541(b)(2).  In

---

[30] *See also In re Policy Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), *aff'd on other grounds*, 213 F.3d 626 (2d Cir. 2000) (unpublished opinion) (same) (citing *Musikahn*).

[31] Lease § 11.02 (Landlord "may, at its option, give written notice to Tenant stating that this Lease and the term hereby demised, shall expire and terminate on the date specified in such notice ....").

addition, the automatic stay does not apply to any act by a lessor under a commercial property lease to gain possession of that property if the lease has terminated prepetition "by the expiration of the stated term of the lease." Bankruptcy Code § 362(b)(10).

70.    Here, the Landlord caused the termination and expiration of the Lease in accordance with its terms and applicable New York law.  Under the Lease, the Demand Letter default notice and Lease Termination Letter sent in accordance with the Lease terms both terminated the Lease and caused the Lease term to expire, effective June 20, 2014.[32]

71.    The Landlord's accelerated termination by the Demand Letter default notice and Lease Termination Letter, in accordance with the Lease terms, constituted an expiration of the stated term of the Lease under New York law.  *See In re Policy Realty*, 242 B.R. at 128.[33]  The Lease term expired and the Lease was terminated on June 20, 2014.

72.    Thus, the Lease is not property of the estate under Bankruptcy Code section 541(b)(2) and, pursuant to Bankruptcy Code section 362(b)(10), the Landlord's Action to gain possession and evict MCANY is not subject to the automatic stay.

## WAIVER OF THE STAY

73.    Bankruptcy Rule 4001(a)(3) provides that the order granting relief from an automatic stay is stayed for 14 days, but authorizes the Court to order otherwise.  Considering the circumstances of this case and, in particular, the posture of the Action pending in Michigan District Court, the Landlord respectfully submits that further stay of an order for relief be waived.

## NO PRIOR RELIEF REQUESTED

74.    No prior application for the relief sought in this Motion has been made to this or any other Court.

---

[32] Lease § 11.02: Landlord "may, at its option, give written notice to Tenant stating that this Lease and the term hereby demised, shall expire and terminate on the date specified in such notice ...." (emphasis added)

[33] *See also In re Southcoast Express, Inc.*, 337 B.R. 739, 742-43 (Bankr. D. Mass. 2006)

## CONCLUSION

75.    WHEREFORE, for the foregoing reasons, the Landlord respectfully request the entry

of an Order, substantially in the form of the proposed order attached as **Exhibit C** to this Motion,

(a) granting relief from the automatic stay arising under Bankruptcy Code section 362, to the extent applicable, to permit the completion of an Action pending in the Michigan District Court for possession of the Shopping Center including (i) entry of a judgment of immediate possession of the Premises in favor of Landlord and (ii) issuance of an order immediately evicting MCANY and SSJC;

(b) in the alternative, determining that the Lease has terminated at the expiration of its stated term and holding that, pursuant to Bankruptcy Code sections 541(b)(2) and 362(b)(10), the Lease is not property of the estate and that the automatic stay does not apply to the Action;

(c) in the alternative, determining that the Debtor is not a party to the Lease and that the Lease is not property of the estate and holding that the automatic stay does not apply to the Action;

(d) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and

(e) granting such other relief as this Court deems just and proper.

Dated:  April 7, 2015
          Wilmington, Delaware

SULLIVAN HAZELTINE ALLINSON LLC

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
Tel:  (302) 428-8191
Fax: (302) 428-8195

and

**WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP**
Jeffrey Miller (admitted *pro hac vice*)
Thomas A. Draghi (admitted *pro hac vice*)
Eric G. Waxman III (admitted *pro hac vice*)
1201 RXR Plaza
Uniondale, New York 11556
Tel:  (516) 622-9200
Fax: (516) 622-9216

*Attorneys for the Movant*

19