## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| SCARBOROUGH-ST. JAMES | ) |
| CORPORATION, | ) Case no.: 15-10625-LSS |
| | ) |
| Debtor. | ) **Hearing Date:    June 17, 2015 at 2:00 p.m.** |
| | ) **Objections Due: June 10, 2015 at 4:00 p.m.** |

## MOTION OF 67500 SOUTH MAIN STREET, RICHMOND, LLC
## FOR AN ORDER CONDITIONING THE USE OF CASH
## COLLATERAL AND PROVIDING ADEQUATE PROTECTION

67500 South Main Street, Richmond, LLC ("**Landlord**"), the owner and landlord for the Shopping Center,[1] by and through its co-counsel, Sullivan Hazeltine Allinson LLC and Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, hereby moves this Court ("**Adequate Protection Motion**") for entry of an order pursuant to sections 363 and 105 of title 11 of the United States Code ("**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") conditioning the use of cash collateral upon (i) the payment of Shopping Center operating expenses pursuant to an appropriate and acceptable monthly budget and (ii) adequate protection of the Landlord's interests by remittance to the Landlord of any Revenues (defined below) in excess of the approved operating expenses.  In no event, can or should the Debtor's professionals receive any payment from the Landlord's cash collateral.

### PRELIMINARY STATEMENT

1.      The Landlord acquired title to the Shopping Center in 2008, subject to a now-terminated Amended and Restated Intermediate Lease ("**Lease**").[2]  For over six years, neither the Debtor nor MCANY of Richmond Fund II, L.P. ("**MCANY**"), the former tenant, paid any rent to

---

[1] The shopping center known as the Richmond Kmart Center, located at 67300-67500 Main Street, Richmond, Michigan ("**Shopping Center**" or "**Premises**").

[2] A copy of the Lease is attached to Exhibit A of the Stay Relief Motion (defined below).

the Landlord – **not a dime**.  Instead, the Debtor impermissibly appropriated and diverted rents from subtenants and any other revenues from the Shopping Center (together, "**Revenues**") for its own use.  The Landlord's interest in the Revenues is paramount and its interest should be adequately protected.

2.      As more fully set forth in the Landlord's Stay Relief Motion,[3] the Lease has been terminated in accordance with its terms and applicable law.

3.      The Landlord commenced an Action[4] in Michigan District Court for possession of the Shopping Center and eviction of the Debtor and MCANY.  In the Action, the Landlord sought and obtained interim injunctive relief prohibiting disbursements of Revenues (without the Landlord's consent) "other than in the ordinary course of business of managing and operating the Premises ...."[5]  As explained below, the Interim Order remains in full force and effect and is binding on the parties.

4.      The Landlord's interest in the Revenues is undeniable and is based on any one of several reasons, each of which is independently sufficient to require adequate protection and to grant this Adequate Protection Motion:

- The Lease is terminated and the Landlord is entitled to the Revenues; the Debtor's interest in the Revenues is extinguished.

- The Interim Order recognized the Landlord's interest in the Revenues and was based, in part, on the substantial likelihood that the Landlord would succeed on the merits

---

[3] Motion filed April 7, 2015 of 67500 South Main Street, Richmond, LLC for an Order Granting Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362(d) to Permit Immediate Possession of Premises Related to Terminated Leasehold, as supplemented by the Supplement to the Motion filed April 21, 2015 and Reply in Further Support filed April 27, 2015 [D.I. 16, 26, 29] ("**Stay Relief Motion**").  The adjourned hearing on the Stay Relief Motion is scheduled for the same date as the hearing on this Adequate Protection Motion.

[4] *67500 South Main Street, Richmond, LLC v. MCANY of Richmond Fund II, L.P. and Scarborough-St. James Corporation*, Case No LT-140473 ("**Action**"), originally commenced in Michigan District Court, 42nd Judicial District ("**Michigan District Court**") and removed to the Federal District Court for the Eastern District of Michigan.  The Landlord has moved to remand the Action to the state of Michigan District Court.  A copy of the Complaint (with exhibits) in the Action is attached to the Stay Relief Motion.

[5] Modified Interim Order Awarding Injunctive Relief to Landlord dated October 20, 2014 ("**Interim Order**"), a copy of which is attached as Exhibit B to the Stay Relief Motion.

of its claim that the Lease was terminated and the Landlord is entitled to possession of the Shopping Center.

- The Landlord has an equitable lien interest, recognized under applicable law, which is entitled to adequate protection.

- The Revenues are, at a minimum, cash collateral under the Bankruptcy Code, whose use is not permitted without adequate protection.

## RELIEF REQUESTED

5.      The Landlord's interest in the Revenues is indisputable.  The Court should grant the Adequate Protection Motion and enter an order (substantially in the form attached to this Motion) conditioning the use of cash collateral upon (i) the payment of Shopping Center operating expenses pursuant to an appropriate and acceptable monthly budget and (ii) adequate protection of the Landlord interests by remittance to the Landlord of any Revenues in excess of the approved operating expenses.

## JURISDICTION

6.      The Court has jurisdiction over this Adequate Protection Motion pursuant to sections 157 and 1334 of title 28 of the United States Code ("**Title 28**").  This matter is a core proceeding pursuant to section 157(b)(2)(A), (M) of Title 28.  The statutory predicates for the relief sought in this Motion are Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 4001(b).

## BACKGROUND

### Lease Terminated

7.      After the Landlord acquired the Shopping Center in 2008, the parties litigated for years, culminating in the Final Award[6] determining that the Debtor and MCANY owed past-due rent in the amount of $652,991.96 for the period from November 2008 through December 2012.

---

[6] Final Award dated January 27, 2014 ("**Final Award**"), a copy of which is attached to the Stay Relief Motion, was issued by the Honorable Garret E. Brown (Ret.), former Chief Judge of the U.S. District Court for the District of New Jersey.  Pursuant to the Final Award, additional rent for the period after 2012 is owed and should be calculated by applying the methodology employed in the Final Award (*i.e.*, income less expenses).

Rent under the Lease was equal to gross rents received from occupants of the Shopping Center in a calendar year (up to an annual maximum of $635,464.08) less the operating expenses of the Shopping Center. The arbitrator also held that professionals' fees are not operating expenses unless they are directly related to the Shopping Center business.[7] The Final Award was confirmed and the Debtor's cross-motion to vacate was denied.[8]

8.    The Debtor and MCANY did not pay the Landlord the amount awarded in the Final Award (which, as noted, covered the past-due rent for the period through 2012), nor did they pay the Landlord the rent owed for the year 2013 (an additional $290,612.51).  As a result, in compliance with the Lease, the Landlord served the Debtor and MCANY with a default notice, giving them 60 days to cure.[9] Defendants failed to cure their defaults and, pursuant to the Lease, the Landlord then sent defendants a notice that the Lease would terminate on June 20, 2014.[10]

9.    Under established New York law, if defendants wanted to toll the cure period or stay the termination of the Lease, they needed to move for an injunction (called a "Yellowstone" injunction in New York) prior to the expiration of the cure period.  Defendants never moved for such an injunction during the cure period, or ever.  They never sought or obtained any tolling of the cure period or stay of the Lease termination, and they never cured their defaults. **As a matter of law and the terms of the Lease, the Lease was terminated on June 20, 2014.**

---

[7] *See* Final Award, at p. 39.  The Debtor's professionals in this bankruptcy case are not rendering services related to the Shopping Center and their fees are not operating expenses of the Shopping Center. *See* Debtor's Applications filed April 9, 2015 [D.I. 19, 20] seeking authority to retain attorneys (services to be rendered are primarily, if not exclusively, related to the bankruptcy).

[8] Decision and Order dated August 4, 2014 ("**Decision and Order**") issued by the Supreme Court of the State of New York – New York County, Index no. 602415/2009, a copy of which is attached to Exhibit A of the Stay Relief Motion. The Decision and Order is a final order that is binding on the parties.  In addition, the Court subsequently issued a money judgment in favor of 67500 South Main Street, Richmond, LLC on March 16, 2015.

[9] A copy of the default notice, dated March 20, 2014, is attached to Exhibit A of the Stay Relief Motion.

[10] A copy of the termination notice, dated May 20, 2014, is attached to Exhibit A of the Stay Relief Motion.

10.     Despite the termination of the Lease, the Debtor and MCANY held over. By letter dated August 20, 2014, the Landlord sent written notice to quit, demanding possession of the Shopping Center.[11]   True to form, the Debtor and MCANY ignored that demand and failed to surrender the premises.

11.     **None of the facts set forth above are in dispute**.

## Michigan District Court Action

12.     The Landlord commenced an Action in Michigan District Court for possession of the Shopping Center and eviction of the Debtor and MCANY.  As noted above, the Landlord sought and obtained the Interim Order prohibiting disbursements of Revenues (without the Landlord's consent) "other than in the ordinary course of business of managing and operating the Premises ...." The Interim Order remains in full force and effect and is binding on the parties.

13.     The Action was on the verge of completion and a final hearing in the Action was scheduled for April 20, 2015.  On March 16, 2015, facing a judgment awarding the Landlord possession of the Shopping Center, the Debtor asked the Michigan District Court for time to respond.

## Debtor's Bankruptcy

14.     Instead of responding, three days later, on March 19, 2015, the Debtor filed its bankruptcy case – in essence, a two-party dispute that does not belong in Bankruptcy Court.  The Debtor's bankruptcy case has no reorganization purpose.  The Debtor's avowed and cynical purpose for its bankruptcy filing is to pursue a **second** appeal of the Final Award without posting the bond required to obtain a stay under New York law.[12]

---

[11] A copy of the notice to quit letter, dated August 20, 2014, is attached to Exhibit A of the Stay Relief Motion.

[12] The Debtor's avowed course is impermissible and barred by, among other things, the *Rooker-Feldman* doctrine and principles of *res judicata*.  The *Rooker-Feldman* doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which together, among other things, determined that lower federal courts lack subject matter jurisdiction to sit in direct appellate review of state

15.     The Landlord filed its Stay Relief Motion for, among other things, relief from the automatic stay to permit the Landlord to (a) complete the Action for possession of the Shopping Center and (b) end a deliberate and protracted campaign conducted since 2008 by the Debtor and MCANY, by which the Debtor has retained control over the Shopping Center and its Revenues while refusing to pay any rents **for over six years** and unlawfully depriving the Landlord of its property.

16.     As set forth in the Debtor's Initial Operating Report,[13] the Debtor's only receipts are the rents it collects from tenants in the Shopping Center.  In its case, the Debtor has made no provision for the adequate protection of the Landlord's undisputed interest in the Revenues or to pay any monies or holdover use and occupancy for the Shopping Center.[14]

17.     By the Debtor's motion filed April 9, 2015 [D.I. 22] ("**Compensation Motion**"), the Debtor sought to establish procedures for professionals' interim compensation from the Revenues. By its Objection filed April 23, 2015 [D.I. 28] ("**Objection**"), the Landlord opposed the Compensation Motion, stated that it did not consent to the Debtor's use of the Revenues, and

---

court judgments. *See, e.g., Slewion v. Court of Common Pleas Philadelphia Cnty.*, 403 F. App'x 727, 729 (3d Cir. 2010) (holding that district court lacked subject matter jurisdiction under *Rooker–Feldman* doctrine over challenge to state court's dismissal of appeal of arbitration award); *Colahar v. Wells Fargo Bank N.A.*, No. CV 14-426-SLR, 2014 WL 5500182, at *4 (D. Del. Oct. 31, 2014) ("'The *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'") (quoting *Lance v. Dennis*, 546 U.S. 459, 460)).

[13] Initial Monthly Operating Report on April 10, 2015 [D.I. 24] ("**Initial Operating Report**") in which the Debtor provided a summary of cash flow projections for receipts and disbursements.  The Debtor schedules payments to its professionals but provides for no payments to the Landlord or for any rent for the Shopping Center.

[14] In its April 2015 Monthly Operating Report [D.I. 40] ("**April MOR**"), the Debtor sets forth disbursements, including a payment of $5,000 to the Debtor's president, Nancy Armano, and payments to an on-site manager.  In its Statement of Financial Affairs dated March 19, 2015 [D.I. 3], the Debtor discloses prepetition payments to Ms. Armano of $16,531.20 and to Debtor's co-counsel in the amount of $40,000.  Upon information and belief, at the April 21, 2015 Section 341 Meeting, Ms. Armano disclosed that she resides in North Carolina and visits the Shopping Center only occasionally.

None of these payments is authorized under either the Interim Order or the Bankruptcy Code and the Landlord reserves all of its rights and remedies concerning those payments and their recovery.

requested that the Court condition the use of the Revenues for operating expenses pursuant to an acceptable budget with remittance of any excess Revenues to the Landlord.

## April 30th Hearing and May 6th Letter

18.     The Court held hearings on the Stay Relief Motion and Compensation Motion on April 30, 2015.  The Landlord reiterated its opposition to the use of the Revenues for any expenditure other than Shopping Center operating expenses.  Debtor's counsel agreed to prepare and provide a budget or consensual stipulation to provide for payment of operating expenses. Debtor's counsel also erroneously stated that the Interim Order was no longer effective due to the removal of the Action to the federal District Court.

19.     Debtor's counsel did not provide a budget or contact the Landlord's counsel.  By letter to Debtor's counsel dated May 6, 2015,[15] Landlord's counsel reiterated that the Landlord did not consent to the use of Revenues without a consensual agreement concerning payment of operating expenses.    Landlord's counsel requested a proposed budget and corrected the misstatement by Debtor's counsel concerning the Interim Order; indeed, the Interim Order remains in full force and effect and binding on the parties.

## ARGUMENT

20.     In these circumstances, the Debtor's bankruptcy case should be short-lived – the entire case is a two-party dispute that does not belong in Bankruptcy Court.  The Debtor is abusing the bankruptcy process and bankruptcy protections as part of a litigation strategy.

21.     Until possession is granted to the Landlord, and the Debtor and MCANY are evicted, the Debtor remains in control of the Shopping Center and the Revenues.  Operating expenses must be paid and the Shopping Center properly maintained.  However, the Revenues cannot be used by the Debtor without the Landlord's consent and adequate protection of the Landlord's interests.

---

[15] A copy of the May 6, 2015 letter is attached to this Motion as **Exhibit A**.

**The Landlord's Interest in the Revenues is Manifest and Paramount**

22.     The Landlord's interest in the Revenues is manifest and based on any one of several reasons, each of which is independently sufficient to require adequate protection and to grant the Adequate Protection Motion.

23.     As owner of the Shopping Center, the Landlord has indisputable rights and interests in the Shopping Center and its Revenues.  As set forth above, the Lease is terminated and the Debtor's rights to the Revenues have been extinguished.  As fee owner of the Shopping Center, the Landlord has the right to the payments owed and paid by the subtenants.  *See, e.g., Eighteen Associates, LLC*, 257 A.D.2d 559, 683 N.Y.S.2d 291 (2d Dep't 1999) (subtenants' obligation to pay landlord is imposed by law and notwithstanding lack of privity).  The Debtor's only interest in the Revenues results from its now unauthorized collection of rent from the subtenant.

24.     The Landlord's interest in the Revenues is recognized in the Interim Order issued by the state of Michigan District Court.  By that order, the Debtor is prohibited from disbursing Revenues except for ordinary course of business expenses.

25.     The issuance of the Interim Order in the Action was based, in part, on the substantial likelihood that the Landlord would succeed on the merits of its claim that the Lease is terminated and the Landlord is entitled to possession of the Shopping Center.

26.     The Action was removed to the federal District Court.  However, contrary to the mistaken assertion of Debtor's counsel, the Interim Order remains **in full force and effect** and is binding on the parties.  *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); 14C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3738 (3d ed.1998); 16 *Moore's Federal Practice* § 107.31[3] (Matthew Bender 3d ed. 2014).

27.    The Landlord also has an equitable lien interest in the Revenues.  Under Michigan Law, when the principal lease is terminated or the tenant lessee fails, an equitable lien arises out of the landlord's ownership interest and is imposed on the rents owed by subtenants, even though no privity of contract exists between the landlord and the subtenants.  *See S.S. Kresge Co. v. Twelve Seventy-Five Woodward Ave. Corp.*, 270 Mich. 218, 220-21, 258 N.W. 252 (1935), *citing Otis v. Conway*, 114 N.Y. 13, 20 N.E. 628 (1889); *see discussion In re Kentwood Pharmacy, L.L.C.*, 475 B.R. 602, 606-07 (Bankr.W.D.Mich. 2012)(in *dicta*, acknowledging under Michigan law a landlord's equitable lien in subtenant rents); *see also* 15 Mich. Civ. Jur. *Landlord and Tenant* § 48 (landlord's equitable lien on rent payable by a sublessee in the event of lessee's insolvency).

## Cash Collateral and Adequate Protection

28.    Given the Landlord's equitable lien rights, which are protected by the Interim Order, the Revenues are the Landlord's cash collateral under the Bankruptcy Code, whose use is not permitted unless adequate protection is provided.

29.    The Shopping Center Revenues are cash collateral under the Bankruptcy Code section 363(a).:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property ….

30.    Use of the Revenues is prohibited without the Landlord's consent and the provision of adequate protection.  As Bankruptcy Code section 363(c) provides:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of the subsection [authorization to operate the debtor's business in the ordinary course without notice or a hearing] unless –
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

31.     Bankruptcy Code section 363(e) provides that adequate protection must be provided to an entity with an interest in property to be used in the case:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

**Conditioned Consent to Use of Cash Collateral**

32.     As set forth above, the Landlord has paramount interests in the Revenues. The Landlord consents to the use of Revenues to pay operating expenses only, and **provided that** the Debtor submits an appropriate and acceptable monthly budget[16] and that any Revenues in excess of the approved operating expenses are remitted to the Landlord.

33.     Payments to the Landlord are altogether appropriate and required by bankruptcy law. Adequate protection is designed to, among other things, preserve positions as of the commencement of the case to assure that values and interests are protected. *See generally In re Melson*, 44 B.R. 454, 456-57 (Bankr.D.Del. 1984); *see also In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). The Landlord's indisputable interests in the Shopping Center and its Revenues must be protected and preserved by payment of the balance of the Revenues to the Landlord.

34.     The Landlord does not consent to the use of the Revenues to pay any of the professionals in this case or professionals retained by the Debtor, including any compensation or reimbursement authorization sought in the Debtor's Compensation Motion.[17]

---

[16] In its April MOR, the Debtor sets forth disbursements in general categories (insurance, utilities, maintenance, etc.). The level of detail in the report is inadequate, but provides a basis for preparation of an appropriate monthly budget.

[17] As noted above, compensation and reimbursement of professionals are not operating expenses of the Shopping Center or its business.

35.     Whether as use and occupancy or rent owed under the Lease, the Landlord is entitled to the amount of the income or gross rents paid by subtenants (up to an annual maximum amount of $635,464.08) after payment of operating expenses.[18]

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Landlord respectfully requests the entry of an Order substantially in the form of the proposed order attached as **Exhibit B** to this Adequate Protection Motion (a) granting this Motion; (b) directing the Debtor to submit immediately an appropriate monthly budget, subject to the Landlord's reasonably exercised approval, identifying operating expenses for the Shopping Center to be paid from Shopping Center Revenues; (c) limiting the use of the Revenues to the payment of Shopping Center operating expenses pursuant to the approved monthly budget; (d) directing remittance of the balance of the Revenues to the Landlord as adequate protection of its undisputed interests in the Shopping Center and its Revenues; and (e) granting such other relief as this Court deems just and proper.

Dated:  May 29, 2015
        Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, DE  19801
Tel:  (302) 428-8191

and

WESTERMAN BALL EDERER MILLER ZUCKER
& SHARFSTEIN, LLP
Jeffrey Miller (admitted *pro hac vice*)
Thomas A. Draghi (admitted *pro hac vice*)
Eric G. Waxman III (admitted *pro hac vice*)
1201 RXR Plaza
Uniondale, New York 11556
Tel:  (516) 622-9200

*Attorneys for the Movant*

---

[18] See Lease § 1.01; Final Award at pp. 24-25, 41.