IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Scarborough-St. James Corporation, | Case No. 15-10625 (LSS) |
| Debtor. | Re: Docket Nos. 16, 41 |

## Opinion[1]

This bankruptcy case, and the dispute between the parties, revolves around two issues: who — Landlord or Debtor — is entitled to rents generated from the subtenants at a shopping center located in Richmond, Michigan ("Shopping Center"), and in which court(s) should the disputes between the parties be resolved.

Before the Court are two motions. The first motion is for relief from stay ("Motion for Relief from Stay" [D.I. 16]) filed by 67500 South Main Street, Richmond, LLC ("Landlord") to permit it to proceed with eviction proceedings against Scarborough-St. James Corporation ("Debtor") pending in a Michigan state court. The Court held two hearings on the Motion for Relief from Stay and accepted documentary evidence proffered by the parties.[2] After consideration of the evidence and arguments, the Court finds that the litigation in Michigan should proceed. Accordingly, the Motion for Relief from Stay is granted.

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] The parties agreed that the motions could be decided on the submissions of the parties and the exhibits presented to the Court, all of which have been reviewed and considered. The facts recited herein are drawn from those documents as well as the docket in this case, and are uncontested. For the record, the Court considered the following docket entries, including all exhibits: Docket Items 3, 4, 16, 26, 27, 28, 29, 32, 41, 42, 43, 44, 45, 47 and 48.

The second motion, also filed by Landlord, is for an order conditioning use of cash collateral and providing adequate protection ("Adequate Protection Motion" [D.I. 41]). After consideration of the arguments and the evidence submitted by the parties, the Court concludes that the Court's recognition of the Modified Interim Order Awarding Injunctive Relief entered in the Michigan Litigation suffices to provide adequate protection to Landlord for its interest in the Shopping Center and its equitable interest, if any, in the rents. As such, no further relief is necessary at this time.

## I.    **Factual Background**

Since 2008, Debtor and Landlord have been litigating the meaning of various provisions in that certain Amended and Restated Intermediate Lease made as of June 26, 2006 ("Lease") between Richmond Realty Limited Partnership, as landlord, and MCANY of Richmond Fund II Limited Partnership ("MCANY"), as tenant.[3] Neither Debtor nor Landlord were the original parties to the Lease. Landlord became the landlord under the Lease (and the owner of the Shopping Center) by foreclosing upon its secured position in the Lease in October 2008.[4]  [D.I. 27 ¶ 17]  Debtor became the successor in interest to MCANY on March 16, 2015 when it purchased all of MCANY's rights and interests under the Lease. [D.I. 27 ¶ 8]  Prior to the purchase of MCANY's rights, Debtor managed the property and collected rent from the subtenants pursuant to a servicing agreement between MACNY and Debtor. [D.I. 27 ¶ 12]  Landlord has not received payment of rent since acquiring ownership of the Shopping Center in October, 2008.  [D.I. 16 ¶ 3]

*The Arbitration and New York Litigation*

The disagreements between Debtor and Landlord regarding the Lease led to significant prepetition litigation in both the New York and Michigan state courts.  In the

---

[3] The tenant under the Lease does not physically occupy the premises. As of the filing of the bankruptcy case, the Shopping Center had eight subtenants. [D.I. 4 Schedule G]

[4] *Madison Realty Capital, LP v. Scarborough-St James Corp.*, 907 N.Y.S.2d 192 (N.Y. App. Div. 2010). This case contains a discussion of: (i) Debtor's 2003 bankruptcy filing in the Southern District of New York; (ii) Landlord's predecessor's 2006 bankruptcy, which was jointly administered with Debtor's 2003 bankruptcy case; and (iii) the foreclosure proceedings brought by Landlord against its predecessor.

2

first instance, the New York Supreme Court, Appellate Division held that the dispute was subject to arbitration pursuant to section 18.13 of the Lease.[5]

The Honorable Garrett E. Brown, Jr. (Ret.) ("Arbitrator")[6] conducted arbitration proceedings in September and October, 2013. [D.I. 16 Ex. A, ex. 2 at 8] In the arbitration proceedings, Landlord took the position that the Lease was terminated pursuant to the foreclosure, but alternatively that it was owed rent under the Lease. [Id. at 4] Debtor, as manager of the Shopping Center, argued that the Lease was not terminated pursuant to the foreclosure and that Landlord was not owed any rent.[7] [Id. at 3-4.] Debtor took the position that the Lease provides for payment of rent through credit and debit entries on the books and records of the original tenant and original landlord under the Lease and, except in a certain circumstance not relevant here, rent is never to be paid in cash. [Id.; D.I. 27 ¶¶ 13-14]

On November 15, 2013, Arbitrator issued an initial ruling holding, *inter alia*, that the Lease remains valid and enforceable notwithstanding the foreclosure, that rent is due to Landlord, and that the proper calculation of rent is gross revenues minus operating expenses. [D.I. 16 Ex. A, ex. 2 at 2] Following the initial ruling, Debtor requested re-argument on various issues, including the calculation of the rent, and again argued that no rent was due to Landlord. [Id.] Landlord opposed that request, but alternatively stated that if re-argument were allowed, it too wished to re-argue certain points. [Id.] Briefs were submitted and oral argument was held on January 20, 2014. [Id.] On January 27, 2014, Arbitrator issued his Final Award. [Id. at 1]

In the Final Award, Arbitrator ruled on each of the claims and counterclaims advanced by the parties as well as the motion to re-argue. Arbitrator determined, again, that the Lease remained valid and enforceable notwithstanding Landlord's foreclosure and that Landlord was owed rent in the amount of gross revenues minus operating expenses. [*Id.* at

---

[5] *Id.*

[6] Judge, United States District Court, District of New Jersey, 1986-2012 (Chief Judge, 2005-2012).

[7] Debtor also took the position that it could not be found to owe any rent to Landlord because it was not the tenant under the Lease. Debtor has not explained whether Debtor's purchase of all of MCANY's rights under the Lease affects Debtor's position on this issue.

3, 41-42] Arbitrator monetized the rental obligation in part, finding that Debtor owed Landlord rent of $652,911.96 for the period from November 2008 through December 2012 including interest at 9% per annum, and that rent for that period should be paid within 60 days of the Final Award. [Id.] Arbitrator also ordered Debtor to produce to Landlord income and revenue statements for the year 2013 within ten days of the Final Award. [Id. at 42] Finally, Arbitrator held that the calculation of rent for the year 2013 and all subsequent years should be calculated by the same method used in the Final Award.[8] [Id.] Debtor did not pay rent as ordered by Arbitrator.

Landlord filed a motion to confirm the Final Award in the Supreme Court of the State of New York, County of New York: Commercial Division Part 49.[9] Debtor opposed the motion and filed a cross-motion to vacate or modify the Final Award. On August 4, 2014, the New York Supreme Court issued its Decision and Order granting Landlord's motion to confirm the Final Award and denying Debtor's motion to vacate or modify the Final Award ("Decision and Order").[10] [D.I. 16 Ex. A, ex. 3] The New York Supreme Court also ordered Landlord to settle an order confirming the Final Award. On December 1, 2014, the New York Court re-issued its August 4, 2014 ruling, and directed the Clerk to enter judgment on the Final Award in favor of Landlord. [D.I. 27 ¶ 7] Thereafter, on March 16, 2015, the New York Supreme Court issued judgment in favor of Landlord in the amount of $720,204.80 ("Judgment"). [D.I. 27 ¶ 7; D.I. 16 ¶ 5] Postpetition, on April 14,

---

[8] The Arbitrator also found that Landlord's previous efforts to terminate the lease pursuant to its provisions was not effective because Debtor properly sought relief in the arbitration proceeding as required by the Lease. [D.I. 16 Ex. 2 at 27-30]

[9] Landlord's counsel explained during argument that while the Final Award is conclusive as between the parties, if Landlord wants to use the offices of the court to collect the monetary award granted in the Final Award, it is necessary to obtain a judgment of the court. Debtor's counsel agreed with the last proposition.

[10] The Decision and Order is dual captioned: *Madison Realty Capital L.P. and 67500 South Main Street Richmond LLC v. Scarborough-St. James Corporation and MCANY of Richmond Fund II Limited Partnership*, Motion Sequence No. 003; Index No. 602145/2009 (granting Landlord's motion to affirm the Final Award) and *In the Matter of the Arbitration Between: Scarborough-St. James Corporation and MCANY of Richmond Fund II Limited Partnership v. Madison Realty Capital L.P. and 67500 South Main Street Richmond LLC*, Motion Sequence No. 001; Index No.: 65469/2014 (denying Debtor's motion to vacate the Final Award).

2015, Debtor appealed the Judgment [D.I. 27 ¶ 10]; Debtor did not seek a stay of the Judgment pending appeal.

***Landlord's Termination Notice and the Michigan Litigation***

After the Final Award, but prior to the Decision and Order, Landlord was not idle. On March 20, 2014, Landlord sent a demand letter to Debtor and MCANY notifying them of an "Event of Default" under the Lease and demanding payment of 2013 rent in the amount of $290,612.51 within 60 days of the date of the letter. [D.I. 16 Ex. A, ex. 4] Landlord calculated the rent pursuant to the formula set forth in the Final Award utilizing the revenue and expense numbers provided by Debtor.[11] [*Id.*] Landlord warned that if MCANY and Debtor failed to pay the rent, Landlord could exercise all of its remedies, including termination of the Lease. [*Id.*]

Landlord followed this letter with another on May 20, 2014 to MCANY and Debtor. [D.I. 16 Ex. A, ex. 5] In the May 20 letter, Landlord noted the lack of response to the March 20 letter and wrote: "[a]ccordingly, pursuant to the Lease, including Section 11.02 thereof, this letter constitutes written notice that the Lease shall expire and terminate on June 20, 2014, as a result of Tenant's failures described above." [*Id.*]

Finally, on August 20, 2014, Landlord sent MCANY and Debtor a Notice to Quit, Termination of Tenancy, and Demand for Immediate Possession ("Notice"). [D.I. 16 Ex. A, ex. 6] In the Notice, Landlord stated that the tenancy under the Lease terminated on June 20, 2014 and demanded that Debtor and MCANY turn over all books and records with the subtenants and all keys to the property, and stop collecting rent from subtenants. [*Id.*] Landlord demanded that Debtor cease managing the Shopping Center and take no further action whatsoever with respect to the Shopping Center. [*Id.*] Not surprisingly, this did not happen.

On September 10, 2014, Landlord commenced litigation in Michigan state court (42nd Judicial District of the State of Michigan) ("Michigan Litigation") by filing a

---

[11] While Debtor argues that Landlord could not terminate the Lease because of the pending appeal of the Judgment, Debtor has not disputed in this Court the process by which Landlord sent the letters or the calculation of the rent owed for 2013.

Complaint for Termination of Tenancy and for Possession of Premises ("Complaint").[12]
[D.I. 43 Ex. D]  Based upon the Final Award and the Notice, Landlord sought a judgment
of immediate possession of the Shopping Center and an order evicting Tenant from the
Premises as well as an accounting.  [*Id.* at 5-7]

On September 22, 2014, the Michigan Court heard argument on the Complaint as
well as Landlord's motion for injunctive relief.  [D.I. 42 Ex. A ¶ 12]  The Michigan Court
determined to defer its ruling on the complaint for possession pending the entry of a final
judgment by the New York Court specifying monetary relief to Landlord.  [*Id.*]  The
Michigan Court did, however, enter its Interim Order Preserving Status Quo regarding the
rents and premises.  [*Id.* ¶ 13]  Subsequently, on October 20, 2014, the Michigan Court
entered its Modified Interim Order Awarding Injunctive Relief to Landlord.  [D.I. 16 Ex. B]
In this Order, the court awarded Landlord relief it believed was "necessary and warranted to
preserve the status quo and to prevent waste to the premises or injury to Landlord's interest
in the premises."  [*Id.* at 2]  Specifically, the Order provides as follows:

> IT IS HEREBY ORDERED THAT MCANY of Richmond
> Fund II, L.P. and Scarborough-St. James Corporation ("Defendants"),
> and all those acting for, on behalf of or in concert with the Defendants,
> are hereby enjoined from the following pending further order by this
> Court:
>
> A.    Making any disbursements of rents collected from the Premises,
>       other than in the ordinary course of business of managing and
>       operating the Premises, without Landlord's express written
>       permission or this Court's approval;
>
> B.    Altering, modifying, renewing, terminating or entering into any
>       sublease with respect to the Premises without Landlord's
>       permission or this Court's approval;
>
> C.    Failing or refusing to pay necessary expenses in the ordinary
>       course of managing and operating the Premises;

---

[12] This is not Landlord's first action in Michigan against Debtor.  As reflected in the Complaint,
Landlord filed an action in July, 2011 to terminate Debtor's tenancy and possession.  After
considering Debtor's motion to dismiss, the Michigan Court dismissed the law suit, without
prejudice, pending an adjudication of the issues in the arbitration, including whether rent was owed
to Landlord.  [D.I. 43 Ex. D at 2]

D.    Damaging or causing injury to the Premises and Landlord's interest in the Premises.

E.    With respect to item B, Landlord shall advise Defendants of Landlord's consent or rejection of any proposed lease within four business days of Landlord receipt of a copy of the proposed lease or other documentation showing the terms of such proposed lease. If the landlord does not respond within four business days of its receipt of the proposed lease or other documentation its silence will constitute implied consent to the proposed lease.

*Id.*

On January 12, 2015, the parties appeared before the Michigan Court, which, notwithstanding the New York Court's December 1, 2014 re-issuance of the confirmation of the Final Award, determined to once again defer consideration of the Complaint. [D.I. 42 Ex. A ¶ 18] The Michigan Court scheduled a telephone status conference for March 16, 2015. [*Id.*] During that call, the Michigan Court was informed that the Judgment had been entered. [*Id.* ¶ 20] The Michigan Court scheduled a further hearing on the Complaint for April 20, 2015. [*Id.*] In the meantime, Debtor filed its bankruptcy petition.[13]

***Bankruptcy Proceedings***

This voluntary bankruptcy proceeding was filed on March 19, 2015. In the five months since this case was commenced, Debtor filed its statements and schedules, moved to retain and pay professionals, and filed its monthly reports. Debtor has sought no other relief from this Court related to the administration of this case. On June 15, 2015, two days before the second hearing in this matter, Debtor filed an adversary proceeding seeking a declaratory judgment regarding the rent owed under the Lease.[14]

Debtor's schedules reflect few creditors. Debtor lists no secured creditors. [D.I. 4 Schedule D] Debtor lists one creditor as having an unsecured priority claim in the amount

---

[13] Debtor filed a Notice of Removal of the Michigan Litigation to the United States District Court, Eastern District of Michigan. [D.I. 27 ¶ 11] As Landlord commenced this litigation, the removal by Debtor was a violation of the automatic stay. *See St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 449 (3d Cir. 1982) (section 362 stays all appeals in proceedings originally brought against the debtor regardless of whether debtor is appellant or appellee).

[14] *Scarborough-St James Corporation v. Madison Realty Capital, L.P. and 67500 South Main Street, Richmond LLC*, Adv. Pro. No. 15-50847.

of $47,218.29.[15] [*Id.* Schedule E]  Debtor lists twelve unsecured creditors with total
liquidated debt of $740,323.18,[16] of which $720,204.80 is Landlord's claim.  [*Id.* Schedule F]
Six of the remaining creditors are owed less than $200.  [*Id.*]  As Debtor's counsel stated
during argument, Debtor does not have significant debt because it was generally paying its
debts as they became due.

According to Debtor, the Lease is its only asset of any real value.  Debtor has
approximately $63,000 in various bank accounts [D.I. 3] and Landlord holds a $500,000
security deposit [D.I. 4 Schedule B].  Debtor's Cash Flow Projection for the 12 Month
Period from March 2015 through February 2016 reflects total receipts of $478,576.33 and
total disbursements of $418,607.78, including $110,000 budgeted for payment of Debtor's
professionals.  [D.I. 24]

Landlord promptly filed the Motion for Relief from Stay seeking to proceed with the
Michigan Litigation.  Landlord agrees that the automatic stay will remain in effect until a
decision on its motion.

## II.    *Jurisdiction*

This Court has subject matter jurisdiction over these matters. 28 U.S.C. § 1334(b).
These matters are core proceedings. 28 U.S.C. § 157(b)(2)(G), (M).

## III.    *Discussion*

### A.    **Cause Exists to Grant Relief from Stay**

The automatic stay is one of the fundamental protections afforded debtors under the
bankruptcy laws. *Midlantic Nat'l Bank v. New Jersey Dep't. of Envtl. Prot.*, 474 U.S. 494, 503,
106 S.Ct. 755 (1986) *reh'g denied* 475 U.S. 1090, 106 S.Ct. 1482 (1986).  The purpose of the
automatic stay is "to prevent certain creditors from gaining a preference for their claims
against the debtor; to forestall the depletion of the debtor's assets due to legal costs in
defending proceedings against it; and, in general, to avoid interference with the orderly
liquidation or rehabilitation of the debtor." *St. Croix Condo. Owners v. St. Croix Hotel*, 682
F.2d 446, 448 (3d Cir. 1982).  "The stay is not meant, however, to be used by a debtor to
pursue its creditors, as more litigation is hardly consistent with the concept of a breathing

---

[15] This creditor also holds 50.75% of Debtor's equity. [D.I. 3]

[16] Two creditors are listed as having claims in an "unknown" amount. [D.I. 4 Schedule F]

spell for the debtor. Instead, the stay is a shield, not a sword that should help the debtor deal with his bankruptcy for the benefit of himself and his creditors." *In re Residential Capital, LLC*, 2012 WL 3249641, at *2 (Bankr. S.D.N.Y. Aug. 7, 2012) quoting *Sternberg v. Johnston*, 582 F.3d 114 (9th Cir. 2009) (internal quotation marks omitted).

Landlord asks the Court to lift the stay to proceed with the Michigan Litigation pursuant to section 362(d)(1) for cause or pursuant to section 362(d)(2) because debtor does not have equity in the property and it is not necessary for an effective reorganization.[17]

Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – for cause . . . .

11 U.S.C. § 362(d). "Cause" is not defined in the Bankruptcy Code. Cause is a flexible concept, is fact intensive, and is to be determined on a case-by-case basis upon consideration of the totality of the circumstances. *In re Tribune*, 418 B.R. 116, 126 (Bankr. D. Del. 2009); *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

When a party seeks relief from stay to continue with prepetition litigation, this Court generally applies the following three prong balancing test:

(i)     Whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit;

(ii)     Whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and

(iii)     Whether the creditor has a probability of prevailing on the merits.

*Izzarelli v. Rexine Products Co. (In re Rexine Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). The movant has the initial burden of proof to put forth a *prima facie* case for cause before the debtor must then rebut the case. *Id.* at 577. Importantly, in making its determination, this Court also considers the general policies underlying the automatic stay. *SCO Group*, 395 B.R. at 857.

---

[17] As almost an aside, Landlord asserts in a footnote that if the Court determines that Debtor's bankruptcy filing was in bad faith, "cause" is demonstrated. Landlord also reserves the right to bring a motion to dismiss if the Court determines the case was filed in bad faith. As Landlord's motion and argument do not expound upon this theory, the Court declines to make such a determination at this time and on this record.

*(i)*     *Debtor will not suffer great prejudice if the stay is lifted.*

Landlord argues that Debtor will suffer no harm if relief is granted and Landlord continues with the Michigan Litigation because the Lease was terminated on June 20, 2014, and as such, it is not property of the estate. Landlord further argues that the only remaining issue is the award of possession of the Shopping Center to Landlord and the virtual eviction of the former tenant. Landlord asserts that such issues are properly resolved in the Michigan Litigation.

Debtor denies that the Lease has been terminated and argues that it will be significantly prejudiced if the Michigan Litigation continues because it will be vulnerable to a determination regarding its lease rights prior to the determination by the New York appellate court of its appeal of the Judgment. Debtor also argues that it will suffer significant prejudice because the continuance of the Michigan Litigation will distract from and interfere with Debtor's administration of the case and will "expose [Debtor] and its estate to the burden of defending the Michigan Litigation, including time expended by certain of [sic] Debtor's president, expenditure of defense costs, the time and participation in completing discovery, and participating in motion practice and would result in distraction from the Debtor's reorganization efforts." [D.I. 27 ¶ 31]

The Court concludes that Debtor will not suffer great prejudice if the stay is lifted so that the Michigan Litigation can proceed. The issue of whether or not the Lease was terminated prepetition must be decided in order to determine Debtor's interest in the Lease. The Michigan Court is in a position to make that determination and has familiarity with the parties and the facts of the case as evidenced by the previous orders it has entered.[18] The Court finds no prejudice to the Debtor that would result from permitting the resolution of issues to proceed in the Michigan Litigation. Debtor may raise in the Michigan Court any and all arguments in support of its position. *See e.g. Tribune*, 418 B.R. at 128 (granting relief from stay to permit litigation to proceed in state court to determine what interest debtor has in a contract).

Moreover, based on the docket to date, the Court concludes that continuation of the Michigan Litigation will in no way impact the administration of the estate. As previously

---

[18] Should the United States District Court for the District of Michigan determine to deny Landlord's motion to remand, it will decide the issues.

stated, in the five months since this case was commenced, Debtor has not sought assistance from this Court in administering these cases. The duties of Debtor's president appear to be the same as they have been since 2008 – managing the Shopping Center and conducting litigation. This will not change if relief from stay is granted.

### (ii)    *The hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor.*

Landlord argues that it will suffer prejudice if the Michigan Litigation is delayed because the Lease is not property of the estate. Debtor disputes this issue. As discussed in connection with the first prong of the analysis, this issue of whether the Lease has been terminated must be decided. Thus, I find that Landlord will suffer prejudice that outweighs the hardship to Debtor if stay relief is not granted.

### (iii)   *Creditor has a probability of prevailing on the merits.*

This prong of the balancing test examines the movant's probability of success on the merits of the Michigan Litigation. "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (Bankr. D. Del. 1993). Landlord argues that the Final Award established Debtor's obligation to pay rent under the Lease and was confirmed by the New York Supreme Court. Landlord argues that based upon the findings in the Final Award it properly sent the demand letter and Notice effectively terminating the Lease on June 20, 2014 pursuant to its terms. Thus, Landlord concludes it will succeed on the merits in the Michigan Litigation.

Citing no authority, Debtor argues that Landlord has "jumped the gun" in the Michigan Litigation and is required to wait until the formula and other issues raised by the Final Award are examined by the New York appellate court. Debtor assets that both Arbitrator and the New York Supreme Court are wrong and, as such, both the Final Award and the Judgment are "fatally flawed making reversal on appeal a foregone conclusion." [D.I. 27 ¶ 41] Debtor argues that Arbitrator improperly modified the Lease [*Id.* ¶ 42] and

that the New York Supreme Court was incorrect because the presiding judge "failed to understand" previous decisions of that court in related litigation [*Id.* ¶ 44].[19]

The Court finds that Landlord has made (at least) the requisite slight showing of the probability of success on the merits of the Michigan Litigation. The Final Award entitles Landlord to rent and establishes a formula for calculation of the rent. The Final Award is final as between the parties (*JSC Sec. Inc. v. Gebbia*, 4 F. Supp. 2d 243, 250 (S.D.N.Y. 1998)) even when an appeal is pending (*In re Bear Stearns Companies, Inc. Sec. Derivative, & Erisa Litig.*, 763 F. Supp. 2d 423, 544 (S.D.N.Y. 2011)). Further, there is a high hurdle to overturn an arbitrator's award. *New York State Corr. Officers & Police Benev. Ass'n, Inc. v. State of New York*, 94 N.Y.2d 321, 326 (A New York appellate court will not "examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes that its interpretation would be the better one. Indeed, even in circumstances where an arbitrator makes errors of law or fact, courts will not assume the role of overseers to conform the award to their sense of justice."); *Revson v. Hack*, 657 N.Y.S.2d 51, 52 (1st Dep't. 1977) (courts will only overturn errors by the arbitrator that are "totally irrational"). Moreover, the Final Award was upheld on appeal to the New York Supreme Court, which concluded the decision was not "totally irrational." Landlord, utilizing the formula and reports provided by Debtor, calculated the rent due for the year 2013. Landlord sent Debtor a default letter for failure to pay 2013 rent, followed by the Notice. Thereafter, Landlord filed the Michigan Litigation. Accordingly, the Court finds that Landlord has shown a probability of success on the merits of its argument that the Lease is terminated.

Next, Debtor argues that Landlord is bound by Arbitrator's determinations that Landlord may not unilaterally terminate the Lease by sending a demand letter and notice, and that Debtor was not required to obtain a so-called Yellowstone Injunction[20] in order to

---

[19] Debtor also argues that the Michigan Litigation will be dismissed as untimely because it was filed prior to the entry of the Judgment. [*Id.* ¶ 45] If so, Debtor will be successful before the Michigan Court.

[20] A "Yellowstone Injunction" is an injunction obtained from the New York Supreme Court in response to a demand notice under a lease. If obtained, a Yellowstone Injunction "toll[s] the running of the cure period and expiration of the lease, so that the tenancy would remain intact until the merits of the dispute were litigated." *Grand Liberte Co-op, Inc. v. Bilhaud*, 487 N.Y.S.2d 250, 252 (App. Term 1984) citing *First Nat. Stores, Inc., v. Yellowstone Shopping Ctr., Inc.*, 290 N.Y.S.2d 721 (1968).

forestall termination of the Lease.  For purposes of the Motion for Relief from Stay, it appears to the Court that Debtor's reliance on these findings is flawed.

In the Final Award, Arbitrator found Landlord's previous attempt to terminate the Lease by sending a demand letter and notice was ineffective because the parties were required to arbitrate disputes under the Lease.  Arbitrator found that Debtor had effectively sought Yellowstone Injunction-type relief in the arbitration, which was then pending, rather than in the state court. [D.I. 16 Ex. A, ex. 2]  The arbitration has now concluded. Arbitrator awarded Landlord rent and determined the calculation for future rent.  Based on the completed arbitration, Landlord sent a new demand letter and Notice, which are now the subject of the Michigan Litigation.  Debtor did not seek a Yellowstone Injunction with respect to the demand letter and Notice before the Michigan Court, and Debtor cites no case for the proposition that a Yellowstone Injunction is not needed in circumstances such as this where the arbitration has concluded or judgment has been entered.  Accordingly, the Michigan Court may find that the termination was effective.[21]

Based on the three-prong balancing test, the Court concludes that lifting the stay is appropriate to permit the Michigan Litigation to go forward.  This ruling is bolstered by the policies underlying the automatic stay.  In filing its bankruptcy case, Debtor is not seeking "breathing room" from its litigation; it is continuing litigation.  Not only did Debtor remove the Michigan Litigation to federal court, it has filed an adversary proceeding in this court regarding interpretation of the Lease.  Thus, it appears that Debtor is not shying away from litigation; rather, Debtor seeks to litigate only issues of its choosing and in its preferred forum.  Debtor is using its bankruptcy case as a "sword" and not a "shield."[22]

---

[21] Of course, the Michigan Court is free to disagree with this Court's rulings made in the context of a motion for relief from stay and the necessary "slight probability" of success on the merits.

[22] Because the Court determines to lift the stay for cause, the Court will not address whether relief is warranted under section 362(d)(2), which would also require the Court to determine the issues in the Michigan Litigation.

### B.    To the extent warranted, Landlord is Adequately Protected by virtue of the Modified Interim Order Awarding Injunctive Relief

Landlord also filed a motion to condition the use of cash collateral and for adequate protection.[23] Landlord argues that since 2008, Debtor has misappropriated rents from subtenants and other revenue (collectively, "Revenue") of the Shopping Center for Debtor's own use. Landlord argues that its interest in the Revenue is paramount to Debtor's on one of four separate theories: "(i) the Lease is terminated and the Landlord is entitled to the Revenues; the Debtor's interest in the Revenues is extinguished; (ii) the [Modified] Interim Order [Awarding Injunctive Relief] recognized the Landlord's interest in the Revenues and was based, in part, on the substantial likelihood that the Landlord would succeed on the merits of its claim that the Lease was terminated and the Landlord is entitled to possession of the Shopping Center; (iii) the Landlord has an equitable lien interest, recognized under applicable law, which is entitled to adequate protection; (iv) the Revenues are, at a minimum, cash collateral under the Bankruptcy Code, whose use is not permitted without adequate protection." [D.I. 41 ¶ 4] In support of its position, Landlord cites Michigan law for the proposition that Landlord has an equitable lien on rent payable by a sublessee when the tenant is insolvent. Landlord also relies on the Modified Interim Order Awarding Injunctive Relief. Landlord does not, however, cite any case for the proposition that its interest in the rents entitles it to adequate protection as that term is used in the Bankruptcy Code.

Debtor argues that a plain reading of Section 363 suggests that adequate protection may only be provided to secured creditors and that a contingent right to collect a judgment resulting from the Final Order does not provide a basis for adequate protection. Further, Debtor argues that if the Lease were deemed a "traditional lease" requiring cash payment, there is no provision in the Bankruptcy Code for payment of interim rent because rent is due annually, in April of each year. Debtor further argues that the Court should ignore the Modified Interim Order Awarding Injunctive Relief because it was obtained without an evidentiary hearing or even opposition papers, that pursuant to Fed. R. Civ. P. 65(b), the

---

[23] Motion of 67500 South Main Street, Richmond, LLC for an Order Conditioning the Use of Cash Collateral and Providing Adequate Protection [D.I. 41].

Order expired within 14 days of its issuance, or that this Court should vacate the Modified Interim Order Awarding Injunctive Relief under 28 U.S.C. § 1450. For this last proposition, Debtor cites to *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 434-37, 94 S.Ct. 1113, 1122-23 (1974) ("*Granny Goose*"). Finally, Debtor argues that the Modified Interim Order Awarding Injunctive Relief has been pre-empted. Debtor cites no authority for this position.[24]

The Court finds that the Modified Interim Order Awarding Injunctive Relief is still in effect. Contrary to Debtor's representation, the Modified Interim Order Awarding Injunctive Relief was not entered *ex parte*. As reflected in the order itself, it was entered after argument on two separate occasions. Moreover, *Granny Goose* does not compel a contrary conclusion. In *Granny Goose,* the United States Supreme Court held that state court injunctions do not have greater effect after a case is removed to federal court than they would if the case remained in state court; thus "[an] ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Granny Goose,* at 439-40. As the Modified Interim Order Awarding Injunctive Relief was not issued *ex parte*, the time constraints of Rule 65(b) are not applicable. *Bank of Montreal v. SF Weekly, LP*, 2010 WL 2266015 (D. Del. 2010) (*Granny Goose* exclusively applies to *ex parte* TROs where sufficient notice was not given). Further, while the United States Court for the District of Michigan has the power to dissolve or modify the injunction as it deems appropriate (*Granny Goose,* at 437) *Granny Goose* does not purport to give this Court the ability to modify or dissolve the injunction.

The Modified Interim Order Awarding Injunctive Relief was entered five months prior to the filing of the bankruptcy and limits the ability of Debtor, *inter alia*, to use the rents

---

[24] Debtor also argues that Landlord is not entitled to rents under the Lease because the rents were unconditionally assigned by the prior owner of the Shopping Center to MCANY, which assigned its rights to Debtor three days before the filing of the bankruptcy petitions. The Court does not have evidence on this issue, nor a sense of whether this argument was raised, or should have been raised in the arbitration. In any event, whatever rights Debtor obtained from MCANY on March 16, 2015 were subject to the Modified Interim Order Awarding Injunctive Relief, entered on October 20, 2014.

other than in the ordinary course of managing and operating the Shopping Center without further permission.[25] Thus, the rents are limited in the hands of the debtor-in-possession as they were limited in the hands of the debtor. *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492-93 (3d Cir. 1997) (citations omitted); *The Majestic Star Casino, LLC v. Barden Dev., Inc. (In re The Majestic Star Casino LLC)*, 716 F.3d 736, 748 (3d Cir. 2013). These cases are:

> . . . founded on the basic tenet of bankruptcy law that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. 11 U.S.C. § 541; *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987); *Groves,* 120 B.R. at 965. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest. *See Silldorff,* 96 B.R. at 866. Further, a trustee takes the property subject to the same restrictions that existed at the commencement of the case. "'To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate.'" *Balay,* 113 B.R. at 445 (quoting 4 Collier on Bankruptcy ¶ 541.06 (15th ed. 1989)).

*In the Matter of Donald E. Sanders*, 969 F.2d 591 (7th Cir. 1992).

Further, the Court concludes that keeping in place the Modified Interim Order Awarding Injunctive Relief will serve as adequate protection for Landlord's equitable interest in the post-bankruptcy rents to the extent it exists. The Court will not, however, require Debtor to turn over excess rent to Landlord; Landlord is not entitled to adequate protection for the Judgment, which Landlord has not argued is anything other than a

---

[25] There is nothing in the record to suggest that Debtor asked the Michigan Court to vacate the Modified Interim Order Awarding Injunctive Relief at any time after it was entered. Landlord suggests that Debtor violated the order, but that is not before the Court.

prepetition unsecured claim.[26]  The remainder of the rent will be held by Debtor pending further decisions of the Michigan Court or this Court.[27]

Finally, Landlord has stated that it does not oppose, and in fact supports, the continued payment of operating expenses, subject to a reasonable budget.  The Court finds that using rents for operating expenses adequately protects Landlord's ownership interest in the Shopping Center.

**Conclusion**

For the reasons set forth above, Landlord's Motion for Relief from Stay will be granted, and its Adequate Protection Motion will be denied at this time.  The Modified Interim Order Awarding Injunctive Relief remains in full effect.

An appropriate order follows.

Dated: August 18, 2015

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[26] The Court does not, however, agree that section 363, on its face, is limited to secured creditors. Section 363(e) provides that an entity "with an interest" in property may request adequate protection.  11 U.S.C. § 363(e).  While the term "interest" is not defined in the Bankruptcy Code, it is not synonymous with a secured interest.  11 U.S.C. § 101(37) (defining "lien" as an "interest in property to secure payment of a debt or performance of an obligation"); *see also In re 229 Main Street Ltd. P'ship,* 262 F.3d 1, 6, 10 (1st Cir. 2001) (the term "interest" is broader than the term "lien" for purposes of sections 362(b)(3), 564(b)(1)(A)); *P. J. Clarke's Rest. Corp.*, 265 B.R. 392 (Bankr. S.D.N.Y. 2001) (citing several cases holding that a landlord has the right to adequate protection of its right to timely payment of post-petition rent).

[27] While challenging Arbitrator's conclusion that rent is payable in cash, Debtor acknowledges that the Lease provides for an annual rent payment.  At argument, Debtor had no answer as to how the annual rent would be paid if Debtor is allowed to spend funds on other than operating expenses.